_____

| | |
|---|---|
| STEVE COOKSEY, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| MICHELLE FUTRELL, in her official capacity | ) |
| as Chair of the North Carolina Board of | ) |
| Dietetics/Nutrition; BRENDA BURGIN ROSS, | ) |
| in her official capacity as Vice Chair of the | ) |
| North Carolina Board of Dietetics/Nutrition; | ) |
| RICHARD W. HOLDEN, SR., in his official | ) |
| capacity as Treasurer of the North Carolina | ) |
| Board of Dietetics/Nutrition; KATHLEEN | ) |
| SODOMA, in her official capacity as Secretary | ) |
| of the North Carolina Board of Dietetics/ | ) |
| Nutrition; CHRISTIE NICHOLSON, | ) |
| PHYLLIS HILLIARD, CATHLEEN E. | ) |
| OSTROWSKI, in their official capacities as | ) |
| Members of the North Carolina Board of | ) |
| Dietetics/Nutrition, | ) |
| | ) |
| **Defendants.** | ) |

_____ )

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

This First Amendment case challenges the censorship of ordinary advice on an age-old topic: What is the healthiest food to eat? Plaintiff Steven Cooksey used the Paleolithic diet of our pre-agricultural ancestors—a diet of fats, meats, fish, eggs, and fresh vegetables—to lose 78 pounds, control his diabetes, and regain his health. As a popular blogger, Plaintiff Cooksey shares advice on diet three ways: (1) answering reader questions in his free Dear Abby-style online advice column; (2) providing free advice to readers, friends, and family in private emails and conversations; and (3) offering a paid life-coaching service.

In North Carolina, however, each of these three forms of speech is a crime without a government-issued dietitian's license. In January 2012, the North Carolina Board of Dietetics/Nutrition ("State Board") informed Plaintiff Cooksey that it is illegal to give personal advice on diet, no matter with whom he speaks  and regardless of whether he is paid. The State Board went through 19 pages of Plaintiff Cooksey's online writings with a red pen, indicating on a line-by-line basis what he may and may not say. This content-based censorship of Plaintiff Cooksey's speech violates the First Amendment.

## JURISDICTION AND VENUE

1.      Plaintiff Cooksey brings this civil-rights lawsuit pursuant to the First Amendment to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

2.      Plaintiff Cooksey seeks declaratory and injunctive relief against the enforcement of the North Carolina Dietetics/Nutrition Practice Act, N.C. Gen. Stat. §§ 90-350 *et seq.*, regulations promulgated pursuant to that Act, 21 N.C.A.C. § 17.0101 *et seq.*, and against the practices and policies of the North Carolina Board of Dietetics/Nutrition, that deny his First Amendment right to communicate his opinions and advice on diet and nutrition to the general public and to individuals.

3.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5.      Plaintiff Cooksey is a United States citizen and resides in the town of Stanley, Gaston County, North Carolina. He is the sole owner of, and sole writer for, a website called Diabetes Warrior (www.diabetes-warrior.net).

6.     Defendants Michelle Futrell, Brenda Burgin Ross, Richard W. Holden, Sr., Kathleen Sodoma, Christie Nicholson, Phyllis Hilliard, and Cathleen E. Ostrowski are members of the North Carolina Board of Dietetics/Nutrition and are sued in their official capacities.

FACTUAL ALLEGATIONS

**Plaintiff Cooksey Is Diagnosed With Diabetes**

7.     In December 2008, Plaintiff Cooksey was 47 years old and obese, suffered asthmatic events, and was chronically ill. He was sedentary and his diet consisted of fast food and junk food.

8.      After catching a cold, Plaintiff Cooksey's health steadily deteriorated until, on Sunday, February 15, 2009, his wife took him to an urgent-care clinic in the early afternoon. He had to be brought in in a wheelchair.

9.     The clinic determined that Plaintiff Cooksey's blood sugar was dangerously high and that he was on the verge of a diabetic coma. The clinic rushed Plaintiff Cooksey to the hospital by ambulance and he was admitted to the intensive care unit for four days.

10.     Plaintiff Cooksey was diagnosed in the hospital with Type II diabetes. Type II diabetes, which typically afflicts overweight adults, is a condition of chronically high blood sugar due to a diminished ability of the cells to absorb blood sugar through the influence of insulin.

11.     There are approximately 26 million Type II diabetics in the United States, and as many as 80 million Americans are pre-diabetic. Diabetes is associated with obesity, heart and kidney disease, high blood pressure, blindness, and lower-limb amputation.

12.     Plaintiff Cooksey was told that he would probably be drug- and insulin-dependent for life. Including the diabetes medications that he received in the hospital, Mr. Cooksey had

3

been on 13 prescription medications in the previous 18 months and many more over-the-counter drugs.

**Plaintiff Cooksey Regains His Health with a Paleolithic Diet**

13.     While hospitalized, a North Carolina-licensed dietitian instructed Plaintiff Cooksey to eat a high-carbohydrate/low-fat diet. After he was discharged, a different North Carolina-licensed dietitian visited Plaintiff Cooksey at home and gave him the same advice.

14.     The high-carbohydrate/low-fat diet advocated by the North Carolina-licensed dietitians is the standard diet for diabetics. This basic diet can be found on the websites of prominent organizations such as the American Diabetes Association and the professional umbrella group for dietitians, the Academy of Nutrition and Dietetics.

15.     Although the high-carbohydrate/low-fat diet is routinely recommended to diabetics, it is also routine to advise diabetics that they can in fact eat whatever they want. For example, the American Diabetes Association's 2011 book, "Type 2 Diabetes for Beginners," states on page 13 that "Many people think that having diabetes means they can't eat their favorite foods. But that's just not true. You can still eat the foods you love."

16.     Plaintiff Cooksey resolved to learn as much as possible about diabetes, diet, and exercise. He discovered that there is a tremendous variety of opinion in the United States on diet expressed in books, magazines, newspaper articles, documentaries, websites, blogs, and social media such as Facebook.

17.     Some sources of dietary information, such as self-help books, are written for the specific purpose of having the reader incorporate the author's opinions into the reader's own diet. For example, the current New York Times bestselling book "Wheat Belly" makes a detailed argument for eliminating wheat in one's diet, and provides step-by-step instructions on how to

4

do that. The website for the book—www.wheatbellyblog.com—contains letters from readers who claim to have benefited from doing exactly what the author intended: incorporate the book's specific dietary advice into the reader's life.

18.     Plaintiff Cooksey also discovered that people in general have diverse opinions on diet, and he regularly asked for, and received, personal advice from family, friends, colleagues, and people he met via the Internet.

19.     Some of the people from whom Plaintiff Cooksey learned about diet—whether by reading their books or speaking with them personally—have academic credentials and government-issued occupational licenses. Some of the people from whom he learned about diet—whether by reading their books or speaking with them personally—do not have academic credentials or government-issued occupational licenses.

20.     Plaintiff Cooksey learned about, and was eventually persuaded by, a school of thought that runs counter to the advice he received from the North Carolina-licensed dietitians. According to this view, for which there is growing scientific evidence, excessive carbohydrates, and not dietary fat, are the primary cause of obesity and Type II diabetes. Because carbohydrates raise insulin by elevating blood sugar, and because insulin is responsible for the accumulation of body fat, a high-carbohydrate/low-fat diet promotes obesity, high blood sugar, and Type II diabetes. This school of thought notes that the nationwide epidemic in obesity and Type II diabetes runs parallel to the decades-old effort by the U.S. government and the medical establishment to promote high-carbohydrate/low-fat diets and the related response by the food industry to consumer demand for low-fat products.

21.     According to this alternative hypothesis, the healthiest diet is a high-fat/low-carbohydrate diet of the sort that Stone Age people ate prior to agriculture. This diet is

5

sometimes called a Paleolithic or caveman diet. Leading best sellers in this area over the last few years include *Good Calories, Bad Calories* by science journalist Gary Taubes, *The Paleo Solution* by Robb Wolf, and *The Paleo Diet* by Loren Coudrain.

22.    Plaintiff Cooksey's Paleolithic diet consists of ordinary, unprocessed or minimally processed food such as beef, pork, chicken, eggs, coconut oil, leafy green vegetables, and butter. He eats nuts and fruits sparingly. Everything in his Paleolithic diet is legally available for purchase in grocery stores and restaurants across the country.

23.    Within a month of reducing his carbohydrate intake, Plaintiff Cooksey's blood sugar normalized. He discontinued insulin and other diabetes drugs, a decision his doctor endorsed.

24.    During this time, Plaintiff Cooksey also began to exercise, starting with walking, then jogging, then running, then sprinting. He also began resistance training with weights.

25.    Plaintiff Cooksey eventually lost 78 pounds, is now fit and energized, needs neither drugs nor doctors, and feels healthier than ever.

**Plaintiff Cooksey Starts an Advocacy Blog for Paleolithic Eating and Diabetes**

26.    In January 2010, Plaintiff Cooksey started a free website to chronicle his personal transformation through a Paleolithic diet. In May 2010, he named his website Diabetes Warrior because so many of his blog posts were about using a Paleolithic diet to bring his diabetes under control. Plaintiff Cooksey's website had approximately 8,000 unique visitors in December 2011 and approximately 12,000 unique visitors in January 2012.

27.    Plaintiff Cooksey does not use any sort of title to describe himself, much less a title such as "doctor," "dietitian," "nutritionist," or any other title that would suggest that he has academic credentials or a government license in the field of diet, which he does not. Plaintiff

Cooksey's website has a disclaimer informing readers that he has no special dietary qualifications and is a layperson.

28.     On his blog, Plaintiff Cooksey recommends that people eat the same simple, unprocessed or minimally processed foods that he eats on his Paleolithic diet.

29.     Plaintiff Cooksey routinely shares knowledge and expresses opinions on his blog that address matters of personal and public concern. For example, Plaintiff Cooksey believes that the high-carbohydrate/low-fat diet is bad for diabetics in particular, but also bad for everyone in general. Plaintiff Cooksey also speaks out against what he believes is a conflict of interest between drug and food manufacturers on the one hand and the diabetic medical establishment on the other. For example, Plaintiff Cooksey does not approve of the fact that the umbrella professional group for dietitians (as well as its lobbying arm), the Academy of Nutrition and Dietetics, receives major financial support from food manufacturers, including junk-food and soda manufacturers.

30.     Plaintiff Cooksey has posted his own personal meal plan on his blog. He also posts Paleolithic recipes on his blog.

31.     Readers are inspired by Plaintiff Cooksey's transformation and come to his website to learn how to replicate Plaintiff Cooksey's diet in their own lives. Readers of Plaintiff Cooksey's blog frequently write Plaintiff Cooksey to tell him of their own personal transformations based on following his meal plan and other things they have learned from his website. Plaintiff Cooksey has become friends with many readers of his blog.

32.     Readers of Plaintiff Cooksey's blog frequently ask Plaintiff Cooksey for personal advice on diet. Plaintiff Cooksey enjoys sharing his knowledge and opinions with his readers,

7

including expressing opinions in the form of personal advice, because he wants to help as many people as possible achieve the success he has achieved.

33.     Some of the people to whom Plaintiff Cooksey offers dietary advice via the Internet are people with whom he corresponds only once or twice. Some of the people to whom Plaintiff Cooksey offers dietary advice via the Internet become genuine friends and he gives them advice on an ongoing basis just as any friend would.

34.     Plaintiff Cooksey also enjoys sharing exactly the same knowledge, opinions, and advice with family and friends whom he has met apart from, or prior to, his blogging. There is no material difference between the knowledge, opinions, and advice that Plaintiff Cooksey shares with his family and friends whom he has met apart from, and prior to blogging, and the knowledge, opinions, and advice that he shares with readers as part of blogging.

35.     For Plaintiff Cooksey, his blog is a two-way street. He enjoys learning from his readers as much as he enjoys sharing his knowledge, opinions, and advice with them. Readers of Plaintiff Cooksey's blog often express their own opinions, and offer their own advice, in the comments section of the blog.

36.     Plaintiff Cooksey's dietary advice consists solely of pure speech and he has never performed a medical procedure on anyone or engaged in any form of physical contact or conduct in the course of expressing dietary opinions in the form of personal advice.

37.     Plaintiff Cooksey also communicates with people over the Internet outside the context of his blog, using social media sites such as Facebook. Sometimes he expresses dietary opinions, including dietary opinions in the form of personal advice, to people via social media such as Facebook.

38.     Some of the people who read Plaintiff Cooksey's website are residents of North Carolina. Some of the people who read Plaintiff Cooksey's website are not residents of North Carolina, but are residents of the United States. Some of the people who read Plaintiff Cooksey's website are residents of foreign countries. According to Plaintiff Cooksey's Internet service provider, in December 2011, Plaintiff Cooksey's blog was viewed in approximately one hundred countries around the world, including on every continent except Antarctica. Plaintiff Cooksey knows that he has provided advice to people from the across the United States and its territories such as Puerto Rico, and Canada, Great Britain, Jamaica, Indonesia, Australia, and South Africa.

**Plaintiff Cooksey Starts a Dear Abby-Style Advice Column**

39.     In December 2011, Plaintiff Cooksey decided to start a free Dear Abby-style advice column on his blog in which he would answer questions from his readers in the form of personal advice.

40.     On December 2, 2011, Plaintiff Cooksey posted an emailed question from a person asking for advice for a diabetic friend who is a vegetarian. The question asked Plaintiff Cooksey about where to find information for vegetarian diabetics because the questioner wanted to be able to help her friend. *See* Ex. 1 at 1-4.

41.     Plaintiff Cooksey has no knowledge as to the identity of the person who wrote the question. Plaintiff does not know if the person who wrote the question is a resident of North Carolina, some other state, or a foreign country. He similarly has no knowledge as to the identity of the questioner's vegetarian friend.

42.     In responding to the question, Plaintiff Cooksey expressed his opinion that a vegetarian diet is not healthy for diabetics because there is no evidence that a vegetarian can control diabetes without drugs and insulin. *See* Ex. 1 at 1-2.

9

43.     In continuing to respond to the question, Plaintiff Cooksey expressed the opinion that the questioner's friend's neuropathy (a loss of sensation in the nerve endings, usually the lower extremities) would not heal, if it could heal at all, when blood sugar is elevated because neuropathy is a condition associated with high blood sugar.

44.     Plaintiff Cooksey recommended a low-carbohydrate diet and provided links to his personal meal plan and previous posts on food. Plaintiff Cooksey also provided a link to exercises. *See* Ex. 1 at 2.

45.     In continuing to respond to the question, Plaintiff Cooksey expressed sympathy at the questioner's friend's need for drugs to deal with the pain of moving around. Plaintiff Cooksey expressed his opinion that the friend needed to get control of his blood sugar immediately. *See* Ex. 1 at 3.

46.     In the final portion of his answer to this question, Plaintiff Cooksey expressed his opinion that a high-carbohydrate vegetarian diet would not be helpful for the questioner's friend. Plaintiff Cooksey recommended that the questioner's friend eat as Plaintiff Cooksey does and exercise as much as the friend can. *See* Ex. 1 at 3-4.

47.     On December 4, 2012, Plaintiff Cooksey posted an account of his written and telephonic communications with his friend Karen Gale, a resident of Indiana. Ms. Gale was a longtime reader of Plaintiff Cooksey's website and had achieved success in losing weight and controlling her diabetes by following Plaintiff Cooksey's Paleolithic diet. He became a friend and mentor, and a source of personal advice and emotional support.

48.     Ms. Gale was in the process of trying to tweak her diet and exercise program to achieve optimal blood-sugar levels. She was engaging in intense physical exercise and experimenting with removing heavy cream and wine from her diet to determine if they were

10

responsible for her elevated blood sugar. She was worried that she would have to resort to medications to bring her blood sugar under control. *See* Ex. 1 at 6. At the time Ms. Gale contacted Plaintiff Cooksey regarding her concerns, she had known him for approximately two years.

49.     Plaintiff Cooksey was skeptical that heavy cream and wine were responsible because they had never elevated his blood sugar. Plaintiff Cooksey suggested to Ms. Gale that she reduce the intensity of her exercise because exercise-induced physical stress can elevate blood sugar in some people. *See* Ex. 1 at 7.

50.     Plaintiff Cooksey reported that Ms. Gale was successful in reducing her blood sugar after modifying her exercise program. *See* Ex. 1 at 8.

51.     The post about the vegetarian diabetic and the post about Ms. Gale were the only two posts under the Dear Abby-style advice column before Defendants ordered Plaintiff to discontinue the column in January 2012.

52.     Plaintiff Cooksey planned on posting more questions and answers to his Dear Abby-style advice column, but did not, because Defendants informed him that doing so is illegal.

53.     Plaintiff Cooksey posted twice more to the section of his website with the Dear Abby-style advice column, but these posts were not questions from readers seeking personal advice.

**Plaintiff Cooksey's Ongoing Uncompensated Mentoring**

54.     In the course of blogging, Plaintiff Cooksey became friends with many readers, such as his friend Karen Gale, who wanted to follow Plaintiff Cooksey's Paleolithic diet in order to duplicate his results in their own lives.

11

55.     Some of these readers/new friends regularly asked Plaintiff Cooksey for personal dietary advice via personal email and telephone calls.

56.     Plaintiff Cooksey became a personal mentor to many of his readers/new friends, communicating with them via email and the telephone over the course of several months, sharing his knowledge, opinions, and personal advice, and giving them emotional support in their journeys.

57.     Plaintiff Cooksey's mentorship of his readers/new friends was never materially different than the in-person mentorship he provided to family and friends whom he had met apart from, or prior to, blogging.

### Plaintiff Cooksey's "Diabetes Support" Life-Coaching Service

58.     In autumn 2010, Plaintiff Cooksey decided to offer a "Diabetes Support" service on his website in which he would provide for a modest fee exactly the same knowledge, opinions, and advice that he had been providing for free in the course of his personal mentorship of his friends.  *See* Ex. 1 at 13-16.

59.     Plaintiff Cooksey views his "Diabetes Support" service as a form of life-coaching in which he tries to share his knowledge, opinions, and personal advice with people, as well as provide them with emotional support.

### The State Board Censors Plaintiff Cooksey's Speech.

60.     On January 12, 2012, Plaintiff Cooksey attended a nutritional seminar for diabetics at a local church in Denver, North Carolina, which is near his home in Stanley, North Carolina. The speaker was the director of diabetic services at a local hospital.

61.     The speaker expressed her view that diabetics can eat essentially anything they want, but that they should ideally eat a diet rich in whole-grain carbohydrates and low in fat.

12

62.     During the Q&A session, Plaintiff Cooksey expressed his opinion that the standard high-carbohydrate/low-fat diet for diabetics is not healthy because it elevates blood-sugar far more than a low-carbohydrate/high-fat diet such as the Paleolithic diet. During the same Q&A session, other members of the public expressed their opinions such as the belief that a vegetarian diet is best for diabetics.

63.     A few days later, the Executive Director of the North Carolina Board of Dietetics/Nutrition, Charla M. Burill, called Plaintiff Cooksey. She informed Plaintiff Cooksey that someone from the church seminar had lodged a complaint with the State Board about Plaintiff Cooksey acting as an unlicensed dietitian. Director Burill informed Plaintiff Cooksey that he and his website were under investigation.

64.     Plaintiff Cooksey asked Director Burill if he needed a lawyer. She replied that the State Board tried to resolve complaints informally, but that the State Board does have the statutory authority to seek an injunction to prevent the unlicensed practice of dietetics.

65.     Director Burill instructed Plaintiff Cooksey to take down the part of his website where he offered his "Diabetes Support" life-coaching service because such a service constitutes the unlicensed practice of dietetics. He did not want to do this, but did so because he feared civil and criminal action against him by the State of North Carolina.

66.     Director Burill told Plaintiff Cooksey to move his disclaimer, which states that he is a layperson, to the home page of his website. Plaintiff Cooksey had no objection to doing so and has since done that.

67.     Director Burill told Plaintiff Cooksey that the Complaints Committee of the State Board would review his website and report back to him on what he may and may not say without a dietitian's license.

13

68.     Plaintiff Cooksey immediately decided not to post any more questions and answers to his Dear Abby-style advice column in which he offered personal advice on diet. He did not want to stop writing his Dear Abby-style advice column, but did so because he feared civil and criminal action against him by the State of North Carolina.

69.     Plaintiff Cooksey also immediately disabled the links to his "Diabetes Support" life-coaching service, as he reported to Director Burill in an email of January 18, 2012. *See* Ex. 2 at 1-2. He did not want to do this, but did so because he feared civil and criminal action against him by the State of North Carolina.

70.     On January 19, 2012, Director Burill sent Plaintiff Cooksey an email with an official two-page document of the State Board called "Guideline A," which states that the "purpose of this guideline is to summarize the North Carolina Dietetics Practice Act for unlicensed persons." *See* Ex. 3 at 3. In her January 19, 2012 email with Guideline A, Director Burill stated that "you may find the attached document helpful in understanding the laws regarding unlicensed persons and nutrition services." *See* Ex. 3 at 1.

71.     On January 27, 2012, Director Burill sent Plaintiff Cooksey an email stating that she and the Complaints Committee of the State Board had completed their review of Plaintiff Cooksey's website. *See* Ex. 4 at 1.

72.     In her January 27, 2012 email, Director Burill attached a 19-page document consisting of copies of various parts of Plaintiff Cooksey's website. Director Burill or someone else from the State Board had used a red pen to indicate what Plaintiff Cooksey is and is not allowed to say in North Carolina without a dietitian's license. *See* Ex. 1.

73.     The general thrust of the red-pen review is that Plaintiff Cooksey is permitted under North Carolina law to convey general information about diet, but not permitted to express

14

his opinion about what any particular person ought to eat because doing so involves a personal assessment and personal counseling, which only government-licensed dietitians may legally conduct. *See* Ex. 1.

74.     The red-pen review begins with the Dear Abby-style advice column and states at the outset that Plaintiff Cooksey is not allowed to answer "diabetic specific questions" from readers because doing so is not "providing information" but is instead "counseling," a form of speech for which a dietitian's license is required. *See* Ex. 1 at 1.

75.     The red-pen review identifies instances in the Dear Abby-style advice column in which Plaintiff Cooksey, according to the State Board, is engaged in an unlawful individual assessment. With respect to Plaintiff Cooksey's response to the reader's question about a vegetarian diabetic friend, the State Board identified Plaintiff Cooksey's statement that the friend's diet was not healthy for diabetes if "he was eating glutenous and/or sugary foods" as impermissible "advising/counseling." *See* Ex. 1 at 1.

76.     The red-pen review asserts that the following statements in Plaintiff Cooksey's Dear Abby-style advice column are forms of assessment that can only be performed in North Carolina with a dietitian's license:

    a.   "Honestly, he needs to get off the 'carb up and shoot up' treatment plan";

    b.   "Your friend must first and foremost obtain and maintain normal blood sugars";

    c.   "maintaining NORMAL blood sugars will allow his body to heal";

    d.   "Cut the carbs to 30 g or less of TOTAL carbs per day and eating meats and veggies will help them."

    e.   "I do suggest that your friend eat as I do and exercise as best they can." *See* Ex. 1 at 2-3.

15

77.     The red-pen review also asserts that it was illegal for Plaintiff Cooksey to direct the first Dear Abby-style questioner to Plaintiff Cookey's meal plan because, although posting the meal plan is not a per se violation of North Carolina's dietitian-licensing statute, it is illegal to direct someone to that generic meal plan in the context of an unlicensed assessment. *See* Ex. 1 at 2.

78.     In terms of the second post under Plaintiff Cooksey's Dear Abby-style advice column, the State Board asserts that Plaintiff Cooksey may not answer a question from a specific person (namely, Karen Gale) because in "addressing diabetic's [sic] specific questions," Plaintiff Cooksey is "no longer just providing information," he is "assessing and counseling, both of which require a license." *See* Ex. 1 at 5.

79.     The red-pen review identified Plaintiff Cooksey's email communication with Karen Gale about whether heavy cream may be affecting her blood sugar as an illegal form of "assessing and advising" for which a license is required. *See* Ex. 1 at 6.

80.     The red-pen review identified Plaintiff Cooksey's account of a private telephone conversation with Ms. Gale as unlawful advising. *See* Ex. 1 at 7.

81.     The red-pen review states that Plaintiff Cooksey unlawfully advised Ms. Gale to consider exercising less because the purpose of Plaintiff Cooksey's suggestion was to try to help Ms. Gale lower her blood sugar. *See* Ex. 1 at 7.

82.     Karen Gale was fully aware that Plaintiff Cooksey was not a government-licensed dietitian, but sought his personal advice anyway because of the valuable knowledge he acquired while going through the process of losing weight and bringing his own blood-sugar levels under control.

83.     In terms of Plaintiff Cooksey's meal plan, the red-pen review states again that it is acceptable for it to be posted on his website, but that it is unlawful for Plaintiff Cooksey to "recommend[] it directly to people you speak to or write you [because] you are now providing diabetic counseling, which requires a <u>license</u>." (emphasis in original). *See* Ex. 1 at 11.

84.     In terms of Plaintiff Cooksey's life-coaching business, the State Board noted that there was still a live link to the business that Plaintiff Cooksey had not taken down. *See* Ex. 1 at 12-16.

85.     The red-pen review stated that testimonials stating how much Plaintiff Cooksey had helped readers of his blog indicated that his "Diabetes Support" life-coaching business would involve "one-on-one counseling," which is prohibited by law. *See* Ex. 1 at 14.

86.     None of the testimonials identified in the red-pen review of Plaintiff Cooksey's "Diabetes Support" life-coaching service were customers. These testimonials were from readers of Plaintiff Cooksey's blog whom he had mentored for free.

87.     The red-pen review asked Plaintiff Cooksey to "consider how these testimonials come across to the public. Would the lay person believe you could counsel him/her." *See* Ex. 1 at 14.

88.     The red-pen review identified several statements in the testimonials of Plaintiff Cooksey's blog readers that indicated to the State Board that an unlawful communication had occurred between Plaintiff Cooksey and a member of the public:

> a.     "I love you for pushing me to go low carb primal. Just got my latest blood test results and they just blew me away. – Melissa"
>
> b.     "Thank you, Steve. You have taught me much. Steve, you have played a huge role in making that dream [i.e., achieving health] possible! – Karen." *See* Ex. 1 at 14.

17

89. The red-pen review drew a prominent "X" through each of the "Diabetes Support" life-coaching services to indicate that such services were illegal. *See* Ex. 1 at 14-15.

### Dietitian Licensure in North Carolina

90. North Carolina regulates dietetics through the Dietetics/Nutrition Practice Act, N.C. Gen. Stat. §§ 90-350 *et seq*., and regulations promulgated pursuant to the Act, 21 N.C.A.C. §§ 17.0101 *et seq.* North Carolina regulated dietetics for the first time in 1991.

91. Violating the Act is a crime. N.C. Gen. Stat. § 90-366.

92. The North Carolina Board of Dietetics/Nutrition has the authority to enforce the Act, promulgate regulations governing the practice of dietetics, investigate potential violations of the statute and regulations, conduct various administrative proceedings, and bring injunctive actions to halt violations of the statute. N.C. Gen. Stat. §§ 90-356, 90-367; 21 N.C.A.C. § 17.0116.

93. "Dietetics/nutrition" is defined as "the integration and application of principles derived from the science of nutrition, biochemistry, physiology, food, and management and from behavioral and social sciences to achieve and maintain a healthy status." N.C. Gen. Stat. § 90-352(2).

94. A license is required to "[e]ngage in the practice of dietetics/nutrition." N.C. Gen. Stat. § 90-365(1). The practice of dietetics consists of providing "nutrition care services," N.C. Gen. Stat. § 90-352(2), which are defined as:

    a. Assessing the nutritional needs of individuals and groups, and determining resources and constraints in the practice setting;

    b. Establishing priorities, goals, and objectives that meet nutritional needs and are consistent with available resources and constraints;

18

c.  Providing nutrition counseling in health and disease;

d.  Developing, implementing, and managing nutrition care systems; and

e.  Evaluating, making changes in, and maintaining appropriate standards of quality in food and nutrition services. N.C. Gen. Stat. § 90-352(4).

95.  The Act exempts retailers of food and nutritional supplements. N.C. Gen. Stat. § 90-368(6), (9). The Act also exempts local and state government employees—as well as federal military, health, and Veteran's Administration employees—engaged in the practice of dietetics without a license in the course of their government employment. N.C. Gen. Stat. § 90-368(3), (5).

96.  Defendants have the regulatory authority to prohibit "any person, whether residing in this state or not, who by use of electronic or other medium performs any of the acts described as the practice of dietetics nutrition, but is not licensed by" North Carolina. 12 N.C.A.C. § 17.0403.

97.  A dietitian has no authority under the law to prevent a person from eating food, to compel a person to eat food, to prescribe medications, to make any medical diagnosis, to perform any medical procedure, or to perform any physical act or engage in any physical conduct with a person, such as cooking a meal or testing blood sugar, that the client or any layperson is not legally allowed to perform without the assistance or presence of a dietitian. A person may legally follow the advice of a dietitian or not, or follow it in part and reject it in part.

**Injury to Plaintiff**

98.  Defendants, through the Executive Director of the State Board, have instructed Plaintiff that numerous statements of his published on his website constitute the unlicensed

19

practice of dietetics under the North Carolina Dietetics/Nutrition Practice Act, N.C. Gen. Stat. §§ 90-350 *et seq.*

99.     The District Attorney's office for Lincoln County,[1] North Carolina, where Plaintiff Cooksey resides, has the statutory authority to bring criminal proceedings against Plaintiff to enforce the provisions of North Carolina Dietetics/Nutrition Practice Act. N.C. Gen. Stat. § 90-366.

100.     Defendants have the statutory authority to bring a state court action for injunctive relief and civil penalties to enforce the provisions of North Carolina Dietetics/Nutrition Practice Act. N.C. Gen. Stat. § 90-367.

101.     Based on the State Board's red-pen review of his website, conversations and emails with officials of the North Carolina Board of Dietetics/Nutrition concerning his alleged violations of the law, the sheer breadth of the personal dietary advice prohibited by North Carolina statutes and regulations, and based on his reasonable fear of civil and criminal proceedings by North Carolina officials, Plaintiff Cooksey has ceased expressing opinions in the form of personal dietary advice based on his fear of civil and criminal action against him by the State of North Carolina.

102.     But for the State Board's red-pen review of his website, conversations and emails with officials of the North Carolina Board of Dietetics/Nutrition concerning his alleged violations of the law, the sheer breadth of the personal dietary advice prohibited by North Carolina statutes and regulations, and his reasonable fear of civil and criminal proceedings by North Carolina officials, Plaintiff Cooksey would not have ceased expressing opinions in the

---

[1] Plaintiff Cooksey resides in the town of Stanley, which is classified as a town within Gaston County, but Plaintiff Cooksey's actual home within the town of Stanley is in Lincoln County.

20

form of personal dietary advice such as his Dear Abby-style advice column or his life-coaching service.

103.     But for the State Board's red-pen review of his website, conversations and emails with officials of the North Carolina Board of Dietetics/Nutrition concerning his alleged violations of the law, the sheer breadth of the personal dietary advice prohibited by North Carolina statutes and regulations, and based on his reasonable fear of civil and criminal proceedings by North Carolina, Plaintiff Cooksey would not have a speech-chilling uncertainty about the legality of private conversations and correspondence with family, friends, colleagues, and readers in which he expresses opinions in the form of personal dietary advice.

104.     But for the State Board's red-pen review of his website, conversations and emails with officials of the North Carolina Board of Dietetics/Nutrition concerning his alleged violations of the law, the sheer breadth of the personal dietary advice prohibited by North Carolina statutes and regulations, and based on his reasonable fear of civil and criminal proceedings by North Carolina, Plaintiff Cooksey would resume his Dear Abby-style advice column, resume expressing opinions in the form of personal advice with his friends and readers secure in the knowledge that such speech is legal, and resume his life-coaching service.

105.     On April 19, 2012, based on the fact that Plaintiff Cooksey had ceased providing personal dietary advice in response to the State Board's instructions, the State Board sent Plaintiff Cooksey a letter stating that it now considers him in substantial compliance and has closed the formal complaint against him. The State Board reserved the authority to reopen the investigation if, in its view, circumstances warrant.

CONSTITUTIONAL VIOLATIONS

**Count I: The Dear Abby-Style Advice Column**

106.     Plaintiff re-alleges and incorporates each and every allegation set forth in paragraphs 1 through 105 of this Complaint as if fully set forth herein.

107.     The free-speech and association clauses of the First Amendment to the U.S. Constitution protect the right to speak and associate freely. Content-specific restrictions on the exercise of these rights are subject to strict scrutiny.

108.     The application of the North Carolina Dietetics/Nutrition Practice Act to Plaintiff Cooksey's Dear Abby-style advice column is a content-based restriction on his speech in that the State Board declared his speech illegal based on the fact that it involved advice about diet and not advice about any other topic such as auto mechanics, taking the SATs, or marriage.

109.     The application of the North Carolina Dietetics/Nutrition Practice Act to Plaintiff Cooksey's Dear Abby-style advice column via the red-pen review of his website, which pointed out, on a line-by-line basis, what he may and may not say, is a content-specific restriction on Plaintiff Cooksey's speech on a matter of personal and public importance.

110.     Defendants have no actual evidence that Plaintiff Cooksey's Dear Abby-style advice column presented any danger to the people with whom Plaintiff Cooksey corresponded or any other person.

111.     Defendants have no actual evidence that the people with whom Plaintiff Cooksey corresponded in his advice column, or any other person, mistook Plaintiff Cooksey for a North Carolina-licensed dietitian or any other sort of licensed professional.

112.     Defendants' enforcement against Plaintiff Cooksey of North Carolina's statutes and regulations concerning dietitian licensure, and those statutes and regulations on their face,

22

sweep far more broadly than necessary to address North Carolina's narrow interest in protecting public health.

113.     Defendants' enforcement against Plaintiff Cooksey of North Carolina's statutes and regulations, as well as the enforcement against him of the policies and practices of the State Board, concerning dietitian licensure violate the First Amendment.

114.     Unless Defendants are enjoined, Plaintiff Cooksey will continue to suffer irreparable harm.

**Count II: Personal Dietary Mentoring**

115.     Plaintiff re-alleges and incorporates each and every allegation set forth in paragraphs 1 through 114 of this Complaint as if fully set forth herein.

116.     The free-speech and association clauses of the First Amendment to the U.S. Constitution protect the right to speak and associate freely. Content-specific restrictions on the exercise of these rights are subject to strict scrutiny.

117.     Defendants' prohibition of Plaintiff Cooksey's personal, ongoing, uncompensated mentorship of Karen Gale and other friends like her is an unconstitutional prohibition on something that Americans have done since the inception of the United States: share advice among friends, acquaintances, readers, or family about what is the healthiest way to eat.

118.     The application of the North Carolina Dietetics/Nutrition Practice Act to Plaintiff Cooksey's personal, ongoing, uncompensated mentorship of his friends, acquaintances, readers, or family is a content-specific restriction on Plaintiff Cooksey's speech on a matter of personal and public importance in that the State Board declared his speech illegal based on the fact that it involved advice about diet and not advice about any other topic such as auto mechanics, taking the SATs, or marriage.

23

119.    The application of the North Carolina Dietetics/Nutrition Practice Act to Plaintiff Cooksey's personal, ongoing, uncompensated mentorship of friends, acquaintances, readers, or family via the red-pen review of his website, which pointed out on a line-by-line basis what he may and may not say is a content-specific restriction on Plaintiff Cooksey's speech on a matter of personal and public importance.

120.    Defendants have no actual evidence that Plaintiff Cooksey's personal, ongoing, uncompensated mentorship of friends, acquaintances, readers, or family presented any danger to the people with whom Plaintiff Cooksey corresponded and spoke, or any other person.

121.    Defendants have no actual evidence that the friends, acquaintances, readers, or family with whom Plaintiff Cooksey has a personal, ongoing, uncompensated mentorship relationship mistook Plaintiff Cooksey for a North Carolina-licensed dietitian or any other sort of licensed professional.

122.    Defendants' enforcement against Plaintiff Cooksey of North Carolina's statutes and regulations concerning dietitian licensure, and those statutes and regulations on their face, sweep far more broadly than necessary to address North Carolina's narrow interest in protecting public health.

123.    Defendants' enforcement against Plaintiff Cooksey of North Carolina's statutes and regulations, as well as the enforcement against him of the policies and practices of the State Board, concerning dietitian licensure violate the First Amendment.

124.    Unless Defendants are enjoined, Plaintiff Cooksey will continue to suffer irreparable harm.

## Count III: "Diabetes Support" Life-Coaching

125.    Plaintiff re-alleges and incorporates each and every allegation set forth in paragraphs 1 through 124 of this Complaint as if fully set forth herein.

126.    The free-speech and association clauses of the First Amendment to the U.S. Constitution protect the right to speak and associate freely. Content-specific restrictions on the exercise of these rights are subject to strict scrutiny.

127.    Plaintiff Cooksey's "Diabetes Support" life-coaching service will consist of personal dietary advice identical to the personal dietary advice that Plaintiff Cooksey already provides for free to his friends, acquaintances, readers, or family in the course of his personal, ongoing, uncompensated mentorship of them as described in this Complaint.

128.    The speech associated with Plaintiff Cooksey's personal, ongoing, uncompensated mentorship of friends, acquaintances, readers, or family, as described in this Complaint, which Plaintiff Cooksey contends is speech protected by the First Amendment, does not lose its First Amendment protection simply because Plaintiff Cooksey charges a fee for that exact same speech.

129.    Defendants' enforcement against Plaintiff Cooksey of North Carolina's statutes and regulations concerning dietitian licensure, and those statutes and regulations on their face, sweep far more broadly than necessary to address North Carolina's narrow interest in protecting public health.

130.    Defendants' enforcement against Plaintiff Cooksey of North Carolina's statutes and regulations, as well as the enforcement against him of the policies and practices of the State Board, concerning dietitian licensure violate the First Amendment.

131.     Unless Defendants are enjoined, Plaintiff Cooksey will continue to suffer irreparable harm.

**Prayer for Relief**

A.  For entry of judgment declaring that the North Carolina Dietetics/Nutrition Practice Act, N.C. Gen. Stat. §§ 90-350 *et seq*., and regulations promulgated pursuant to the Act, 21 N.C.A.C. § 17.0101 *et seq.*, are unconstitutional as-applied and on their face to the extent that they prohibit Plaintiff Cooksey from continuing his Dear Abby-style advice column on his website;

B.  For entry of judgment declaring that the North Carolina Dietetics/Nutrition Practice Act, N.C. Gen. Stat. §§ 90-350 *et seq*., and regulations promulgated pursuant to the Act, 21 N.C.A.C. § 17.0101 *et seq.*, are unconstitutional as-applied and on their face to the extent that they prohibit Plaintiff Cooksey from engaging in personal, ongoing, uncompensated dietary mentorship;

C.  For entry of judgment declaring that the North Carolina Dietetics/Nutrition Practice Act, N.C. Gen. Stat. §§ 90-350 *et seq*., and regulations promulgated pursuant to the Act, 21 N.C.A.C. § 17.0101 *et seq.*, are unconstitutional as-applied and on their face to the extent that they prohibit Plaintiff Cooksey from pursuing his "Diabetes Support" life-coaching service;

D.  For entry of judgment declaring that the North Carolina Dietetics/Nutrition Practice Act, N.C. Gen. Stat. §§ 90-350 *et seq*., and regulations promulgated pursuant to the Act, 21 N.C.A.C. § 17.0101 *et seq.*, are unconstitutional as-applied and on their face to the extent that they prohibit anyone who is not a North Carolina-licensed dietitian from expressing

26

an opinion on what a specific individual ought to eat in light of the circumstances of that individual's life;

E.  For entry of judgment declaring that the North Carolina Dietetics/Nutrition Practice Act, N.C. Gen. Stat. §§ 90-350 *et seq*., and regulations promulgated pursuant to the Act, 21 N.C.A.C. § 17.0101 *et seq.*, are unconstitutional as-applied and on their face;

F.  For entry of a permanent injunction enjoining Defendants from enforcing unconstitutional statutes, regulations, and practices against Plaintiff Cooksey and others similarly situated;

G.  For an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

H.  For such further legal and equitable relief as the Court may deem just and proper.

Respectfully submitted,

Jeff Rowes*
Paul M. Sherman*
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA  22203
Telephone: (703) 682-9320
Fax: (703) 682-9321
E-mail: jrowes@ij.org; psherman@ij.org
*Application Pro Hac Vice to be filed*

*Attorneys for Plaintiff*

/s/ Robert W. Shaw
Robert W. Shaw (N.C. State Bar No. 32923)
WILLIAMS MULLEN
P.O. Box 1000
Raleigh, NC 27602
Telephone: (919) 981-4310
Fax: (919) 981-4300
E-mail: rshaw@williamsmullen.com

*Counsel for Plaintiff*

27