**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:12cv336**

| | | |
|---|---|---|
| **STEVE COOKSEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **ORDER ON** |
| **Vs.** | ) | **PRELIMINARY INJUNCTION** |
| | ) | |
| **MICHELLE FUTRELL, et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** is before the court on plaintiff Steve Cooksey's Motion for a Preliminary Injunction (#4), defendants' Memorandum of Law in Opposition (#14), and plaintiff's Reply Brief (#18). Having reviewed the motion, in accordance with Rule 65(a)(1), Federal Rules of Civil Procedure, the court issues the following order denying plaintiff's motion for a preliminary injunction.

## FACTS

This motion arises out of plaintiff's desire to provide nutritional counseling and support on his personal website, "Diabetes Warrior" (www.diabetes-warrior.net), notwithstanding his lack of training or certification in such areas. Pl. Br., p. 3. Plaintiff began posting online in 2010 and primarily shares his experience with managing his diabetes through a high-fat, low-carbohydrate diet, which is sometimes known as a "Paleolithic diet." Id. His website receives thousands of visits each month. Id. The website includes a disclaimer that plaintiff is neither a licensed medical professional nor does he have any formal medical education. See id.

Plaintiff receives online requests for advice from individuals seeking dietary and nutritional advice, to which he sometimes posts public responses, Pl. Br., pp. 4-5. Through the website and other online networks, he has fostered personal friendships with some of his readers. Id., pp. 3-4. This inspired plaintiff to offer a "coaching" service by charging a monthly fee of up to $200 in exchange for making personal telephone calls and emails on a regular basis. Id., p. 4. Plaintiff

generated one paying client and stated that the service was not a "money maker." Affidavit of Charla Burill, ¶ 8, attached as Defs. Ex. 1.

In January of 2012, an unknown individual filed a complaint with the North Carolina Board of Dietetics/Nutrition, (the "Board") after plaintiff voluntarily expressed his support for the Paleolithic diet at a nutritional seminar for diabetics held at a local church. Pl. Br., p. 5. The Board is required to investigate all complaints. Defs. Mem., p. 2. The Executive Director informed plaintiff by telephone on January 18 that he and his website were under investigation. Pl. Br., p. 5; Defs. Mem., p. 4. By the end of January, the Board informally reviewed the contents of plaintiff's website and made line-by-line edits to demonstrate what plaintiff may advise as a non-licensed dietician. Pl. Br., p. 6. Plaintiff voluntarily updated his website to conform with the Board's revisions, id., p. 7, and had no further contact with the Board.

Through its Executive Director, the Board sent a letter to plaintiff on or about April 20, indicating that it would continue monitoring plaintiff but not take further action, based on plaintiff's compliance. Id. According to the Board, it only opened and closed an investigation of plaintiff, but never ordered him to make any changes to his website nor did it threaten or take legal action against him. Defs. Mem., p. 4; see also Burill Letter, attached as Pl. Exh. A. Plaintiff filed suit against various members of the Board including its Executive Director.

## ANALYSIS

### I. Standard for Granting Preliminary Injunction

Preliminary injunctions are an extraordinary remedy whose primary function is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit. In re Microsoft Corp. Antitrust Litigation, 333 F.3d 517, 525 (4th Cir. 2003). A plaintiff seeking a preliminary injunction or temporary restraining order ("TRO") must give notice to the opposing party under Federal Rule of Civil Procedure 65 and establish all four of the following elements: (1) plaintiff is likely to succeed on the merits; (2) plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in plaintiff's favor; and (4) an injunction is in

the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 374 (2008); Moore v. Kempthorne, 465 F. Supp. 2d 519, 525 (E.D. Va. 2006) ("[t]he standard for granting either a TRO or a preliminary injunction is the same"). The most recent Supreme Court test was adopted by the Fourth Circuit in The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds*, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010)(memorandum opinion), *reissued in pertinent part*, 607 F.3d 355 (4th Cir. 2010), *overruling* Blackwelder Furniture Co. v. Selig Mfg. Co., 550 F.2d 189 (4th Cir. 1977).

In Winter, the Supreme Court emphasized that a plaintiff must demonstrate more than just a "possibility" of irreparable harm and a strong showing of likelihood of success on the merits. Winter, 129 S.Ct. at 375. As discussed below, although plaintiff has given defendants the requisite notice under Rule 65, he has already voluntarily complied with defendants' suggested revisions and cannot establish the four requirements needed to obtain a preliminary injunction, nor can he show the heightened burden set forth in Winter.

## II. Discussion

### A. Likelihood of Success on the Merits

Plaintiff claims that he is likely to succeed on the merits under a theory that his First Amendment right to free speech is currently restricted in three ways: he may not provide free advice on his website; he may not provide free advice to others privately; and he may not receive payment for his advice. Pl. Br., p. 8. In order to demonstrate the requisite likelihood of success on the merits, plaintiff must show that he is likely able to prove that the state laws amount to a content-based restriction of his right to free speech and that the restriction is subject to a strict scrutiny standard. He must first meet the minimal requirements of standing.

#### 1. Elements of Standing

To establish standing sufficient to confer subject matter jurisdiction, plaintiff must show that he (1) has suffered an injury in fact; (2) which was caused by the action of the defendants; and (3) which will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555,

560-61 (1992). First, the extent of plaintiff's injury is questionable, because the Board never took formal action against plaintiff. Plaintiff volunteered to remove parts of his website which the Executive Director explained were problematic. The Executive Director wrote, "Should you agree with our comments, we would ask that you make any necessary changes to your site, and moreover, going forward, align your practices with the guidance provided." Burill Aff., ¶ 15. There is no evidence that plaintiff protested further or was otherwise ordered to comply. With respect to the second element, plaintiff can claim that he would not have edited his website without pressure from the Board. The third factor is difficult to determine because defendants have not taken any formal action which a court could find violated plaintiff's rights. Plaintiff has already removed the content which defendants objected to, thus a favorable decision to plaintiff would not necessarily provide him with full redress.

Similar to standing, defendants question whether plaintiff's suit is ripe for review.

> Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction [.]" Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 n. 18 (1993). **In assessing whether a dispute is ripe for adjudication, a court must evaluate "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.**" Nat'l Park Hospitality Ass'n, 538 U.S. at 808; Abbott Labs., 387 U.S. at 149 (emphasis added).

Intl. Acad. of Oral Medicine & Toxicology v. North Carolina State Bd. Of Dental Exam'rs, 451 F.Supp.2d 746, 749 (E.D.N.C., 2006) (quoting Nat'l Park Hospitality Ass'n v. Dep't of Interior), 538 U.S. 803, 807-08, (2003) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148-49, (1967), *overruled on other grounds by* Califano v. Sanders, 430 U.S. 99 (1977); see also Ohio Forestry Assoc., Inc. v. Sierra Club, 523 U.S. 726, 732 (1998). With respect to the first factor in determining ripeness, a "case is fit for judicial decision where the issues to be considered are purely legal ones and where the agency rule or action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings." Intl. Acad., 451

F.Supp.2d at 750 (E.D.N.C., 2006), quoting Charter Fed. Sav. Bank v. Office of Thrift Supervision, 976 F.2d 203, 208 (4th Cir.1992). The Board has not issued a final ruling or taken a final action with respect to plaintiff's website. It simply closed the investigation based upon plaintiff's substantial and voluntary compliance and made clear that it reserves the right to continue to monitor plaintiff. See Burill Letter. The second factor, hardship to the parties if court consideration is withheld, similarly weighs in favor of defendants, due to plaintiff's voluntary compliance and defendants' closing of its investigation.

**2. Restrictions on Free Speech**

Plaintiff attempts to classify defendants' suggested changes to his website as content-based restrictions subject to strict scrutiny. The United States Court of Appeals for the Fourth Circuit has held that governmental regulation of a profession is constitutional if the regulations have a rational connection with the applicant's fitness or capacity to practice the profession. Accountant's Soc'y of Virginia v. Bowman, et al., 860 F.2d 602, 603-04 (4th Cir. 1988), citing Lowe v. S.E.C., 472 U.S. 181, 211 (1985) (White, J., concurring). Furthermore, "[p]rofessional regulation is not invalid, nor is it subject to first amendment strict scrutiny, merely because it restricts some kinds of speech." Id. at 604, citing Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 456-57 (1978). Defendants reviewed plaintiff's website and explained which statements violate North Carolina law, and defendants' suggested changes have a rational connection with plaintiff's lack of training or certification in dietetics or nutrition.

The Fourth Circuit further explained how trial courts should determine when the regulation of a profession becomes a regulation of speech or of the press. Accountant's Soc'y, 860 F.2d at 604 (internal citations omitted). Specifically, the key is to find "a personal nexus between professional and client." Id. (internal citations omitted). As Justice White set forth in Lowe, supra, "[o]ne who takes the affairs of a client personally in hand and purports to exercise judgment on behalf of the client in the light of the client's individual needs and circumstances is properly viewed as engaging in the practice of a profession." Id. (internal citations omitted).

Plaintiff does not dispute that he lacks any professional credentials, so any regulations pertaining to nutrition and/or dietetics are applicable to him. He also refers to developing relationships with his readers and seeks permission to provide one-on-one advice about medical issues, which by their nature, must be highly individualized and personally tailored. Because the speech at issue is restricted as a professional regulation, it must only withstand a rational-basis test, and plaintiff's claim that the speech should be permitted is unlikely to succeed at trial.

Thus, having considered the likelihood that he will succeed on the merits of his claim as well as preliminary issues of standing and ripeness, plaintiff has not met the first element necessary for the court to preliminarily enjoin the enforcement of the Act.

**B. Irreparable Harm**

Plaintiff claims that "the suppression of speech is always an irreparable harm," Pl. Br., p. 22, yet he acknowledges that he updated his website to conform with defendants' edits prior to filing his Motion for a Preliminary Injunction and prior to defendants taking any formal action against him. Id., p. 7. He does not claim that he will suffer financially if the website continues in its current state, or even that fewer viewers will visit his site. Indeed, plaintiff concedes his site is not a money maker. Because plaintiff's website now complies with the Board's request and there is no speech in violation of North Carolina law, the evidence overwhelmingly shows that plaintiff will not be irreparably harmed in any way in the absence of preliminary relief.

**C. Balance of the Equities**

With respect to the third element, plaintiff claims that the balance tips decidedly in his favor and asserts that he will suffer irreparable harm if his nutritional speech is limited. Pl. Br., p. 29. He further requests broad relief: that this court preliminarily enjoin the Board from enforcing state law against plaintiff and "other laypeople like him who want to offer advice, either for free or for compensation, about what food to buy at the grocery store." Pl. Reply, p. 24. In response, defendants have described the origins of the Board and its legitimate purpose: that dieticians and nutritionists be licensed to effectively protect the public against unsafe health

practices. Def. Mem., p. 18.

While there is no doubt that members of the public can seek nutritional and medical advice from countless sources, whether licensed by the state of North Carolina or not, plaintiff's interest in providing nutritional advice is outweighed by defendants' responsibility to the public in that area. The facts as presented demonstrate that the Board responded to a citizen's complaint by opening an investigation. The correspondence between plaintiff and the Board, via the Executive Director, shows that plaintiff's treatment was neither arbitrary nor capricious. Plaintiff remains free to advocate his nutritional beliefs through other avenues: he may associate himself with a licensed nutritionist; become a licensed nutritionist himself; or sell or endorse a line of nutritional supplements or products which would allow him to legally assert nutritional claims. Thus, because plaintiff has other forms of free speech through which he may continue to promote his beliefs, but defendants are charged with enforcing laws that are patently designed to protect public welfare, the balance of equities tips in defendants' favor in order to enforce the laws which protect the public.

**D. Public Interest**

Similar to plaintiff's argument with respect to the balance of equities, plaintiff claims that an injunction will serve the public interest by promoting an open marketplace of ideas. Defendants counter that the statutes serve the public interest by protecting the health, safety, and welfare of North Carolinians against unlicensed individuals from providing medical advice. Defendants further correctly note that individuals living with diabetes are more likely to suffer from complicated health problems and need personalized care from a licensed professional.

The court is mindful of the positive changes that plaintiff has made in his own life and plaintiff undoubtedly serves as an inspirational figure who can empower others to begin to take charge of their health. However, the public interest in accurate medical information is strong. After all, defendants began investigating plaintiff based on a complaint from a member of the community who was clearly concerned about plaintiff's conduct. Plaintiff is still free to post his

experience online and voice his opinion at community discussions, and members of the public may still visit plaintiff's website and use his inspirational story as a springboard to discuss their individual condition with a qualified practitioner. Therefore, the court concludes that the fourth element, public interest, will not be served by an injunction.

## III. Conclusion

Because plaintiff has not established each of the four elements needed to obtain a preliminary injunction, this court will deny plaintiff's motion for a preliminary injunction. Accordingly, plaintiff's request with respect to setting a bond requirement is also denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for a Preliminary Injunction (#4) is **DENIED**.

Signed: August 7, 2012

Max O. Cogburn Jr.
United States District Judge