IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:12-CV-336-MOC-DSC

| | |
|---|---|
| STEVE COOKSEY, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| MICHELLE FUTRELL, et al., | ) **AND ORDER** |
| Defendants. | ) |

**THIS MATTER** is before the Court on "Defendants' Motion to Dismiss Plaintiff's Complaint," Doc. 19, filed July 27, 2012 and the parties' associated briefs and exhibits, Docs. 20, 22 and 23.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion to Dismiss be <u>granted</u>, as discussed below.

### I. PROCEDURAL AND FACTUAL BACKGROUND

Accepting the allegations of the Complaint as true, as we must at this early stage in the proceedings, Plaintiff Steve Cooksey ("Plaintiff") resides in Stanley, North Carolina and is the owner of a website called "Diabetes Warrior." Doc. 1 at ¶ 5. In late 2008, Plaintiff was obese, sedentary and chronically ill. Id. at ¶ 7. In February 2009, he was admitted to a hospital intensive care unit on the verge of a diabetic coma and diagnosed with Type II diabetes. Id. at ¶¶ 9-10. After his diagnosis, Plaintiff researched a variety of sources for information concerning dietary options

for diabetics. Id. at ¶ 16. Based upon his research, Plaintiff was persuaded that the healthiest diet for him would be a high-fat/low-carbohydrate diet akin to that of Stone Age people, sometimes known as the Paleolithic or caveman diet. Id. at ¶¶ 16-17, 20-21. He adopted Paleolithic diet principles, began exercising and experienced positive results. Id. at ¶¶ 22-25.

In January 2010, Plaintiff started a free website, later named "Diabetes Warrior", to share information about his success with the Paleolithic diet. Id. at ¶ 26. The website includes a disclaimer that Plaintiff is a lay person and possesses no special dietary qualifications. Id. at ¶ 27. Plaintiff receives online requests from individuals seeking dietary advice, and he sometimes posts his responses. Id. at ¶¶39-51, 54-56. In the Fall of 2010, Plaintiff decided to offer "Diabetes Support" services on his website which included direct telephone and email counseling for a fee. Id. at ¶¶ 58-59, Ex. 1 at 13-16. He represented that he could help clients who purchased one of these packages : "(1) Improve Blood Sugar Control[,] (2) Lose Weight [and] (3) Improve [their] health and fitness." Id. Plaintiff views his packages as a form of life-coaching where he shares his knowledge, opinions and personal advice with others and provides them with emotional support. Id. at ¶ 59.

On January 12, 2012, Plaintiff attended a nutritional seminar for diabetics at a local church in Denver, North Carolina. Id. at ¶ 60. During the question and answer portion of the seminar, Plaintiff expressed his opinion that the standard high-carbohydrate/low-fat diet for diabetics is unhealthy because it elevates blood-sugar far more than a low-carbohydrate/high-fat diet such as the Paleolithic diet. Id. at ¶¶ 61-62. Someone in attendance at the seminar contacted the North Carolina Board of Dietetics/Nutrition and complained that Plaintiff was acting as an unlicensed dietitian. Id. at ¶ 63. The Board's Executive Director, Charla Burill, contacted Plaintiff to inform him of the complaint. She advised Plaintiff that he and his website were under an informal

2

investigation by the Complaints Committee of the Board. Id. at ¶¶ 63-64, 67. On January 19, 2012, Ms. Burill sent Plaintiff an email attaching "Guideline A" which summarizes the North Carolina Dietetics Practice Act (the "Act") for unlicensed persons. Id. at ¶¶ 70-72, Ex 3.

Under the Act, a license is required to provide "nutrition care services," which is defined to include "[a]ssessing the nutritional needs of individuals and groups" and "[p]roviding nutrition counseling in health and disease." N.C. Gen. Stat. §§ 90-352, 365. The Act also establishes the minimum qualifications to be eligible for licensure (§ 90-357) and requires the Board – among other duties – to "[d]etermine the qualifications and fitness of applicants for licenses," enact rules necessary to carry out its duties, adopt a Code of Ethics, conduct investigations and "do all other things necessary and proper" to enforce the Act (§ 90-356).

On January 27, 2012, Ms. Burill sent Plaintiff another email advising that she and the Complaints Committee had completed their review of his website. Id. at ¶¶ 70-72, Ex. 1. She attached a document consisting of copies of various pages from Plaintiff's website along with handwritten comments about what is permissible under the Act. Id.

Plaintiff alleges that he has now ceased providing personal dietary advice because of his fear of civil and criminal action by the State of North Carolina. Id. at ¶ 101. On April 19, 2012, the Board sent Plaintiff a letter advising that it would continue to monitor him but would not take any further action based on his compliance. Id. at ¶ 105.

On May 29, 2012, Plaintiff commenced this lawsuit against the named Defendants in their official capacities as members of the North Carolina Board of Dietetics/Nutrition, seeking declaratory and injunctive relief "against the enforcement of the North Carolina Dietetics/Nutrition Practices Act, N.C. Gen. Stat. §§ 90-350 et seq., regulations promulgated pursuant to that Act, 21 N.C.A.C. § 17.0101 et seq., and against the practices and policies of the North Carolina Board of

3

Dietetics/Nutrition, that deny his First Amendment right to communicate his opinions and advice on diet and nutrition to the general public and to individuals." Id. at ¶ 2. Plaintiff also filed a Motion for Preliminary Injunction on May 29, 2012. Doc. 4. District Judge Max O. Cogburn, Jr. denied the Motion for Preliminary Injunction on August 8, 2012. Doc. 21.

On July 27, 2012, Defendants filed this Motion to Dismiss, Doc. 19. Defendants argue that Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Motion to Dismiss has been fully briefed and is now ripe for review.

## II. ANALYSIS

Article III of the United States Constitution "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" Allen v. Wright, 468 U.S. 737, 750 (1984). "Doctrines like standing [and] ... ripeness are simply subsets of Article III's command that the courts resolve disputes, rather than emit random advice." Bryant v. Cheney, 924 F.2d 525, 529 (4th Cir.1991).

Standing concerns "whether the plaintiff is the proper party to bring th[e] suit...." Raines v. Byrd, 521 U.S. 811, 818 (1997). The "central purpose of the standing requirement [is] to ensure that the parties before the court have a concrete interest in the outcome of the proceedings such that they can be expected to frame the issues properly." ProEnglish v. Bush, 70 F. App'x 84, 87 (4th Cir.2003)(quoting Harris v. Evans, 20 F.3d 1118, 1121 (11th Cir.1994)). To satisfy the standing requirement and confer subject matter jurisdiction, the party invoking federal jurisdiction must show that (1) he has suffered an injury in fact, (2) the injury is fairly traceable to the defendants' actions, and (3) it is likely, and not merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); see also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 154 (4th Cir.2000) (en banc).

4

To meet the first requirement, the party must demonstrate an "injury in fact" that is concrete and particularized, and actual or imminent, as opposed to conjectural or hypothetical. Lujan at 560-61. "The standing requirement is designed to guarantee that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate." Emery v. Roanoke City Sch. Bd., 432 F.3d 294, 298 (4th Cir.2005) (internal quotations omitted).

"When a defendant raises standing as the basis for a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction, ... the district court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir.2005) (internal quotation marks omitted). Nevertheless, "[f]or purposes of ruling on a motion to dismiss for want of standing, the trial ... court[ ] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

The undersigned finds that Plaintiff cannot show that he has suffered an injury in fact traceable to Defendants' conduct. The Board made no formal determination concerning whether Plaintiff's conduct constituted the unlicensed practice of dietetics/nutrition. Plaintiff merely received informal guidance from a Board committee and the executive director based on their review of his website. Plaintiff volunteered to remove parts of his website which Ms. Burill found problematic. Furthermore, Ms. Burill wrote, "Please feel free to contact me with any questions you may have. Should you agree with our comments, we would ask that you make any necessary changes to your site, and moreover, going forward, align your practices with the guidance provided." Doc. 1 at Ex. 4. There is no evidence that Plaintiff was ordered to comply.

Significantly, neither the formal guidelines sent to Plaintiff as an email attachment nor Ms. Burill's comments suggested any limitation on his expression of his opinions. In accordance with

5

the Act and the Regulations, and as Plaintiff himself acknowledges, the "general thrust" of the comments was that he could express his opinions about dietary matters but could not perform individualized personal assessments or counseling. Id. at ¶¶ 73-83, Ex. 3.

North Carolina law specifically obligates a licensing agency to provide a declaratory ruling on the applicability of any statute it administers upon request. N.C. Gen. Stat. § 150B-4. Plaintiff does not allege that he requested or received such a ruling. The Board never advised Plaintiff that his speech was illegal as alleged in his Complaint. The Board did not take, or even threaten, any formal action in response to the complaint lodged against Plaintiff, and he expressed no objections to the comments or guidelines he received before filing this lawsuit. Plaintiff voluntarily complied with the suggestions made by the Complaint Committee and removed parts of his website that were problematic.

In light of the foregoing, the Court finds that Plaintiff has not suffered an injury in fact and therefore, does not have Article III standing.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the "Defendants' Motion to Dismiss Plaintiff's Complaint," Doc. 19, be **GRANTED**.

### IV. ORDER

**IT IS ORDERED** that all further proceedings in this action, including all discovery, are **STAYED** pending the District Judge's ruling on this Memorandum and Recommendation and Order.

### V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this

6

Case 3:12-cv-00336-MOC-DSC   Document 24   Filed 08/29/12   Page 6 of 7

Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: August 29, 2012

David S. Cayer
United States Magistrate Judge